# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# OXFORD DIVISION

**CHERRY LYNETTE HARDY**                                                       **PLAINTIFF**

**V.**                                                       **CIVIL ACTION NO.:3:20-cv-88-DAS**

**COMMISSIONER OF SOCIAL SECURITY**                                 **DEFENDANT**

## MEMORANDUM OPINION

The plaintiff, Cherry Lynette Hardy, seeks judicial review of the Social Security Administration's decision denying her application for Supplemental Security Income. The plaintiff asserts the ALJ erred in assessing her upper extremity limitations; in fairly evaluating the record; and in failing to develop the record by ordering a consultative examination. She also argues the vocational expert erred when he named three jobs the plaintiff could perform but included two obsolete jobs. The court having reviewed and considered the record, briefs and oral argument and having considered the applicable regulations and case law in this matter, finds the decision of the Commissioner should affirmed in part and be reversed and remanded in part.

## FACTS

The plaintiff, Cherry Lynette Hardy, filed for supplemental security income on July 25, 2018, alleging she became disabled on June 12, 2018. The plaintiff alleges she is disabled based on knee pain, high blood pressure, tendonitis and carpal tunnel syndrome. The Social Security Administration denied the claim initially and on reconsideration. Following a hearing, the ALJ

issued an unfavorable decision on June 5, 2019 (Dkt. 14 p. 16-24).[1] The Appeals Council denied the request for review and this timely appeal followed.

The ALJ determined Hardy had the following severe impairments: obesity, lumbago, arthralgia of the knees, carpal tunnel syndrome, status post bilateral carpal tunnel releases, neuropathy, right elbow epicondylitis and asthma. The ALJ found she retained the residual functional capacity (RFC) to perform light work, except she could only occasionally climb and balance. She could frequently reach, handle, and finger but needed a cane to assist in walking. He determined she had no past relevant work experience but found based on the testimony of the vocational expert, there was significant other work she could perform such as a food and beverage clerk (21,000 jobs), as a catalog clerk (44,000 jobs), and as a cutter and paster (41,000 jobs).

## ANALYSIS

## UPPER EXTREMITY LIMITATIONS

In the present case, the plaintiff argues the ALJ's decision that she could frequently reach, handle, and finger frequently is not supported by substantial evidence. Her treating physician gave a medical source statement check-marking that Hardy would have "significant manipulative limitations." She argues the ALJ, therefore, should have found she had a more limited capacity than frequently reaching, handling, and fingering. If her manipulative abilities were limited to occasionally, for instance, the base of available, unskilled jobs at the sedentary level would be significantly eroded. *See* SSR 96-9p, 1996 WL 374185 (July 2, 1996).

The plaintiff also argues the ALJ erred when he found her treating physician's opinion was not persuasive. Finally, she argues that if the ALJ was not going to grant her disability

---

[1] The administrative record is Docket 9. Unless otherwise indicated, all references are to the administrative record. The page cites are to the court's numbering system, rather than the administrative numbering.

benefits on the scant medical records, he should have granted her request for a consultative examination so that she could have a Tinel's and Phalen's test performed.

Working backward up this chain of arguments, the court notes the ALJ has substantial discretion in ordering or denying a consultative examination and need do so only if he needs additional evidence to enable him to decide. *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989). The plaintiff requested another consultative examination to include two tests for carpal tunnel syndrome; however, in this case there is no dispute that Hardy has carpal tunnel syndrome. The ALJ acknowledged the diagnosis and found that it was a severe impairment. It is clear the CTS is why the ALJ limited her to frequent rather than constant handling and fingering. Consequently, the ALJ did not abuse his discretion when he chose not to order the requested consultative examination.

As to the assessment of the treating physician's opinion, the ALJ found the opinions offered to be less than persuasive because he appeared to rely largely on the patient's subjective complaints and because the physician's objective findings did not support the opinion. Additionally, the treating physician appears to be acting as an advocate for his patient. On a thin record with few visits or abnormal objective findings to justify the restrictions, the treating physician not only found "significant manipulative limits," but that the plaintiff could walk only two hours in a day, sit two hours in a day, and would be distracted by pain so frequently it would interfere with her ability to perform even simple work. He further opined she would be off task a quarter of the day and would miss four days of work per month. However, his records showed his patient was exaggerating her pain complaints. His abnormal findings were largely limited to swelling, some reduced range of motion, and crepitus in her knee. As to her carpal tunnel syndrome, the medical records show a positive Phalen's test before the onset of disability, but

only tenderness of the volar aspect of the wrists on tap and bending at one visit. At two visits, Hardy did not mention wrist complaints at all. Consequently, the record supports finding the treating source's opinions were not supported by his objective findings.

Finally, as the Commissioner points out, the check mark on "significant manipulative limitations" is not specific enough to contradict the RFC. The plaintiff disagrees with the determination, urging that her handling and fingering was more limited, but the court finds the ALJ's determination of her RFC is supported by substantial evidence.

## **VOCATIONAL EVIDENCE**

Next, the plaintiff seeks remand arguing that two of the jobs: "catalog clerk" and "cutter and paster" are obsolete, leaving only the food and beverage clerk job as an existing option. Hardy argues that with only 21,000 jobs available in the national economy, the Commissioner has not proven there are a significant number of jobs in the national economy that she can perform. She also argues that the court should disregard the VE's testimony as unreliable, because she testified to two jobs that are obsolete. The Commissioner does not counter that the jobs are not obsolete but rather asserts Social Security regulations allow it and vocational experts to rely on the Dictionary of Occupational Titles and therefore the plaintiff cannot prevail. Regardless, this court recently ruled that it will discount the testimony of a vocational expert and disregard the numbers given by such an expert where common sense indicates the job is in fact obsolete and the DOT numbers unbelievable. In *Hardine v. Comm. of Social Security*, 2021 WL 109843 (N.D. Miss. Feb 26, 2021), the court recognized that the job of addresser is obsolete. The court, as it stated in *Hardine,* remains puzzled by the reliance of vocational experts on obsolete jobs given the great number and wide variety of jobs listed in the DOT and will not accept an obsolete job "any more than it would accept the job of a lamplighter." *Id.* at *1.

In the present case the plaintiff challenges the job of catalog clerk. The catalog clerk job falls under the DOT code 249.587- 018, which is titled "Document Preparer, Microfilming (business ser.). The DOT describes the job as follows:

> Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to produce one or more pages into single page of standard microfilming size, using photo copying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify microfilm- camera operator … of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

The plaintiff also challenges the job of cutter and paster as obsolete. The DOT describes this job at 249.587-014, as "tears or cuts marked articles or advertisements in newspapers and magazines, using knife or scissors. Records names of publication, page and location, date, and name of customer on label, and affixes label to clipping." Just as with the addresser job in *Hardine,* the court has no trouble recognizing these two jobs are obsolete and the DOT numbers not believable. *Read v. Commissioner of Social Security*, 2016 WL 2610117 (Md. May 6, 2016) (finding all three jobs selected by VE, "cutter and paster," "telegraph service rater," and "addresser," were obsolete). "If the only jobs that the applicant is … capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working…." *Id.*

The plaintiff argues the court should disregard the balance of the VE's testimony and find substantial evidence does not support the ALJ's decision that a significant number of jobs exist in the national economy. In effect the plaintiff argues the court should weigh the demonstrated

unreliability of part of the VE's testimony, against the VE's testimony about remaining available jobs.

This court in *Hardine* affirmed the Commissioner's decision, accepting some of the VE testimony despite also finding clear error in other parts of the VE's testimony. In *Hardine,* the court found that the VE's testimony regarding the "addresser" job was erroneous because the job was obsolete and that it could not consider the VE's testimony about the number of addresser jobs. Nevertheless, based on the same VE's testimony this court agreed there were two other jobs available totaling 36,436 jobs in the national economy and affirmed the decision.

Since issuing its order in *Hardine,* the court has reviewed other decisions by this court where the court declined to rely on the VE's testimony in such cases. The court is persuaded by the logic of the analysis given in *Buggs v. Saul,* Civil Action No. 3:20-cv-68-RP (N.D. Miss. Oct. 28, 2020) and *Goliday v. Saul,* Civil Action No. 3:20-cv-228-DMB-RP (N.D. Miss. May 21, 2021), *report and recommendation adopted* (N.D. Miss. June 15, 2021).

In *Buggs,* the court found a direct conflict between the VE's testimony and the DOT. The VE testified the plaintiff could work as a button reclaimer, a job that conflicted with assessed RFC reaching limitations. Disregarding the VE's testimony about the misidentified job left 29,100 jobs available in the national economy. The court held:

> Given the lack of Fifth Circuit guidance on whether such a number of jobs in the national economy is sufficient and considering the questionable reliability of the VE's testimony … the court is uncomfortable concluding and will decline to conclude that there exists a significant number of such jobs in the national economy.

*Buggs*, at p. 2 (citing *Morgan v. Colvin*, 2016 WL 5369495, at * 10 (N. D. Tex. Sept. 6, 2016)).

In *Goliday*, the ALJ relied on VE testimony naming the addresser job as one the plaintiff could do. The plaintiff argued this job was obsolete and thus urged the court to disregard the remaining jobs named by the VE as unreliable. After noting the Fifth Circuit has not provided a specific number as "significant," it looked to a Sixth Circuit case law, setting out factors to consider when determining what amounts to "significant numbers." The Sixth Circuit instructs:

> A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; *the reliability of the [VE]'s testimony*; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on."

*Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (emphasis added).

Citing *Buggs,* the court found the reliability of the VE's testimony was questionable because he provided a job that was clearly obsolete. "This undermines the reliability of the VE's testimony as to the number of catalogue clerk and surveillance system monitor jobs in the national economy, and as such the undersigned declines to conclude that those jobs exist in significant numbers in the national economy based on the VE's testimony." *Goliday,* at p.6. The court also rejected the cases cited by the Commissioner that held smaller numbers were found to be significant because "in none of those cases was the VE found to have given erroneous or unreliable testimony as was given in *Buggs* and in the present case." *Id.*

This court agrees with the reasoning and holdings in *Buggs* and *Goliday* and declines to find that there is substantial evidence to support the Step Five finding that there are significant numbers of jobs this plaintiff can perform. Paraphrasing *Goliday,* "To be clear, the undersigned makes no categorical finding that [21,000 food and beverage clerk] jobs in the national economy is not a significant number …. Such numbers may well constitute a significant number under other circumstances. However in this particular case, based on the VE's erroneous testimony

7

regarding the number of [obsolete] jobs in the national economy and the resulting questionable reliability of the VE's testimony regarding the [remaining jobs] …, the undersigned finds the ALJ's conclusion that jobs exist in significant numbers is not supported by substantial evidence." *Goliday, at p. 6.*

## **CONCLUSION**

For the foregoing reasons the undersigned finds the decision of the Commissioner is not supported by substantial evidence. Therefore, the court finds that the decision of the Commissioner should be reversed and remanded for further proceedings to include the taking of testimony from a vocational expert about the availability of jobs in the national economy this plaintiff can perform.

A separate judgment will be entered.

THIS the 30th day of June, 2021.

/s/ **David A. Sanders**
**U.S. MAGISTRATE JUDGE**